**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAMONT HAGAN,** | : | **Civil No. 1:13-CV-2731** |
| | : | |
| **Plaintiff** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **QUENTIN DOLPHIN, et al.,** | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM OPINION**

## I.   <u>INTRODUCTION</u>

The plaintiff in this action, Damont Hagan, is an inmate in the custody of the Pennsylvania Department of Corrections, (DOC) currently housed at the State Correctional Institution at Huntingdon. He is also a frequent litigant in federal court. In this case, Hagan has sued five individuals, all of whom are contracted with or employed by the DOC, alleging that the defendants engaged in a conspiracy to modify his health diagnosis and discontinue his prescription medications in order to keep him hidden from certain Department of Justice officials who were intending to tour the facility and interview inmates as part of an investigation.[1] Hagan also alleges

---

    [1] The remaining defendants in this action include Quentin Dolphin, David Swisher, James Harrington, Robert Marsh, and John Wetzel, the Secretary of the Pennsylvania Department of Corrections.

that the defendants took these actions to retaliate against him for filing grievances and other litigation against prison staff. Additionally, Hagan alleges that the defendants prolonged his detention in segregated housing, and exhibited deliberate indifference to his serious medical needs, in violation of the Eighth Amendment.

Hagan initiated this action by filing a complaint on November 11, 2013. (Doc. 1.) On December 10, 2013, the District Court ordered the plaintiff to file an amended complaint by December 30, 2013. (Doc. 8.) Hagan complied with this order, filing an amended complaint on December 26, 2013. (Doc. 9.) Thereafter, the defendants moved to dismiss the amended complaint. (Docs. 20, 22.) In response, Hagan filed a brief opposing the motions (Doc. 26.), but then filed a second amended complaint on June 9, 2014. (Doc. 28.) Hagan filed this second amended complaint without having first sought leave of court to do so.

Hagan's second amended complaint inspired the defendants to file new motions to dismiss as well as a motion to strike the pleading. (Docs. 29, 30.) The case was subsequently referred to the undersigned following the parties' consent to proceed before the Magistrate Judge. (Doc. 41.) Upon receiving this referral, we entered an order granting the plaintiff leave to file the second amended complaint, denying the then-pending motions to dismiss the first amended complaint as moot, and denying the defendants' motion to strike the second amended complaint. (Doc.

42.)  In the same order, Hagan was ordered to respond to the defendants' motions to dismiss.  (Id.)

On September 3, 2014, the corrections defendants filed a separate motion to dismiss the second amended complaint.  (Doc. 44.)  Hagan responded to this motion and to defendant Dolphin's earlier motion with briefs filed on September 15 and September 18, 2014.  (Docs. 46, 47.)  Defendant Dolphin filed a reply brief in further support of his motion on September 29, 2014.  The motions are now fully briefed and ripe for disposition.

## II.   DISCUSSION

### A.   Rule 12(b)(6):  Standard of Review

A motion to dismiss for failure to state a claim is designed to test the legal sufficiency of a complaint.  Thus, Rule 12(b)(6) of the Federal Rule of Civil Procedure provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted.  The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in

3

Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of necessary elements of the plaintiff's cause of action. Id. at 556.  Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotation marks omitted) (quoting Twombly, 550 U.S. at 555).  Thus, "[a]t the motion to dismiss stage, we accept as true all factual assertions, but we disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements.  See Iqbal, 556 U.S. at 678–79, 129 S.Ct. 1937; Twombly, 550 U.S. at 555–57, 127 S.Ct. 1955; Burtch, 662 F.3d at 220–21." James v. City of Wilkes-Barre, 700 F.3d 675, 681 (3d Cir. 2012).

As the court of appeals has observed:  "The Supreme Court in Twombly set forth the 'plausibility' standard for overcoming a motion to dismiss and refined this approach in Iqbal.  The plausibility standard requires the complaint to allege 'enough facts to state a claim to relief that is plausible on its face.' Twombly, 550 U.S. at 570, 127 S.Ct. 1955.  A complaint satisfies the plausibility standard when the factual

4

pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955). This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully.' Id. A complaint which pleads facts 'merely consistent with' a defendant's liability, [ ] 'stops short of the line between possibility and plausibility of "entitlement of relief." ' " Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011) cert. denied, 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012).

Thus, in assessing a motion to dismiss under Rule 12(b)(6) the court engages in a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In undertaking this task, the court generally relies only on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s]

5

that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also, U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (instructing that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment.") (original emphasis removed). However, the court may not rely on other parts of the record in determining a motion to dismiss. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

## B.     Eighth Amendment Deliberate Indifference

With our review cabined and confined solely to the well-pleaded facts in the complaint, we note that Hagan alleges a conspiracy among the defendants to alter his medical diagnoses and to restrict his access to prescription medication, all in an effort either to retaliate against him for his exercise of First Amendment activity, or to ensure that Hagan was not seen by officials with the Department of Justice who were

6

conducting an investigation into the treatment of prisoners at SCI-Huntingdon.

Hagan has framed these alleged actions in part as deliberate indifference by the

defendants to his serious medical needs, in violation of the Eighth Amendment to the

United States Constitution.

Hagan faces an exacting burden in advancing this Eighth Amendment claim

against prison officials in their individual capacities.  To sustain such a claim, he

must:

> [M]eet two requirements: (1) "the deprivation alleged must be,
> objectively, sufficiently serious;" and (2) the "prison official must have
> a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825,
> 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and
> citations omitted).  In prison conditions cases, "that state of mind is one
> of 'deliberate indifference' to inmate health or safety." Id.  "Deliberate
> indifference" is a subjective standard under Farmer-the prison official-
> defendant must actually have known or been aware of the excessive risk
> to inmate safety.

Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

These principles apply with particular force to Eighth Amendment claims

premised upon inadequate medical care.  In the medical context, a constitutional

violation under the Eighth Amendment occurs only when state officials are

deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429

U.S. 97, 105 (1976).  To establish a violation of his constitutional right to adequate

medical care in a prison setting, Hagan is required to point to evidence that demonstrates both (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need.  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain."  Estelle, 429 U.S. at 104.  Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or by "persistent conduct in the face of resultant pain and risk of permanent injury," White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106.  "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners."  Durmer, 991 F.2d at 67 (citations omitted).  Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered

to the inmate.  Clark v. Doe, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care").  Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference.  See, e.g. Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')".  Gindraw v. Dendler, 967 F. Supp. 833, 836 (E.D. Pa. 1997).  Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; see, e.g., Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008); James v. Dep't of Corrections, 230 F. App'x 195 (3d Cir. 2007); Gillespie v. Hogan, 182 F. App'x 103 (3d Cir. 2006); Bronson v. White, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); Gindraw v. Dendler, 967 F.Supp. 833 (E.D. Pa. 1997), particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services.  Instead, courts have defined the precise burden which an inmate must sustain in order to advance an Eighth Amendment claim against a healthcare professional premised on allegedly inadequate care, stating that:

9

The district court [may] properly dis[miss an] Eighth Amendment claim, as it concerned [a care giver], because [the] allegations merely amounted to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his . . . care.  The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in Estelle v. Gamble, 429 U.S. 97, 104 (1976), and its progeny, has two prongs:  1) deliberate indifference by prison officials and 2) serious medical needs.  "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' " "Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." . . . . [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the evidence he presented established that he received timely care . . . . Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

James, 230 F. App'x at 197-198 (citations omitted).

In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional medical judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)).

Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim.  See Taylor v. Norris, 36 F. App'x 228, 229 (8th Cir. 2002) (deliberate

10

indifference claim failed when it boiled down to a disagreement over recommended treatment for hernias and decision not to schedule a doctor's appointment); Abdul-Wadood v. Nathan, 91 F.3d 1023, 1024-35 (7th Cir.1996) (inmate's disagreement with selection of medicine and therapy for sickle cell anemia falls well short of demonstrating deliberate indifference); Sherrer v. Stephen, 50 F.3d 496, 497 (8th Cir.1994) (inmate's "desire for a replacement joint instead of fusion surgery is merely a disagreement with the course of medical treatment and does not state a constitutional claim"); Kayser v. Caspari, 16 F.3d 280, 281 (8th Cir.1994) (prison provided escalating level of treatment for inmates's ailments over time, and inmate's disagreement with course of medical treatment was insufficient basis for Eighth Amendment violation); Czajka v. Caspari, 995 F.2d 870, 871 (8th Cir.1993) (inmate's mere disagreement with doctor's informed decision to delay surgery does not establish Eighth Amendment claim); Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir.1990) (inmate failed to prove deliberate indifference where his complaints represented nothing more than mere disagreement with course of his medical treatment); Lair v. Oglesby, 859 F.2d 605, 606 (8th Cir.1988) (disagreement about whether doctor should have prescribed medication does not result in constitutional violation); Martin v. Sargent, 780 F.2d 1334, 1339 (8th Cir.1985) (Inmate failed to state facts indicating doctor deliberately disregarded his medical problem; inmate's disagreement as to

proper medical treatment does not give rise to Eighth Amendment violation). Therefore, where a dispute in essence entails no more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference." Gindraw v. Dendler, 967 F. Supp. 833, 836 (E.D. Pa. 1997)(citations omitted).

Although this case present a close question, we find that Hagan has alleged sufficient factual matters to support his claims against the moving defendants with respect to their alleged decision to have Hagan's mental health diagnosis altered and to deprive him of necessary medication, decisions that Hagan claims were not medically based but were instead driven by a desire to retaliate against Hagan for his litigation activity against prison staff. The defendants suggest that the plaintiff's pleading is overly general, lacks in factual allegations, or otherwise relies upon allegations that represent no more than Hagan's mere disagreement with his physician and prison officials regarding their treatment of his mental health needs. Liberally construing this *pro se* complaint, as we are required to do, we find that the inferences that may reasonably be drawn from Hagan's well-pleaded allegations go beyond a mere disagreement, but also allege a denial of care for non-medical reasons, and thus provide further support for denying the motion. Moreover, we note that defendant

Dolphin repeatedly asserts that Hagan has failed to "establish" or prove his claims, but this argument is more properly reserved for a motion for summary judgment after the parties have an opportunity to engage in the discovery process.

Hagan's allegations are straightforward.   First, he contends that he was approached by defendants Dolphin and Swisher and was told that he was being taken off of his medication because he persisted in filing grievances and other paperwork. Likewise, Hagan claims that defendant Dolphin falsified documents to remove any reference in Hagan's record that showed he had a psychotic disorder.  In and around this time, however, Hagan contends that he was suffering from flashbacks and loss of concentration, was extremely irritable, and was engaging in acts of self-harm. (Doc. 28 ¶¶ 5, 8, 10.)  According to Hagan, due to Dolphin altering his medication and removing him from the active mental health roster, he received no mental health treatment over a 90-day period, other than to speak with a staff member on occasion. (Id. ¶ 11.)  Hagan contends that Dolphin knew not only about his mental health diagnoses, but also knew that Hagan had been held in solitary confinement for more than seven years, and that during that time he had been diagnosed with schizophrenia, depression, psychotic disorder, mood disorder, borderline personality disorder, and anti-social personality disorder, which all developed in conjunction with Hagan being held in solitary confinement.  (Id. ¶ 13.)  Hagan contends that the defendants knew

13

this, and also knew that Hagan had a history of self-mutilation and that he had attempted suicide during times when he was not taking his medication.  (Id. ¶ 14.) Hagan contends that staff in the solitary confinement wing of the prison are inadequately trained to deal with inmate mental health needs, and in fact are either indifferent to inmate needs or, in some cases, have assaulted mentally ill inmates or actively encourages inmates to harm themselves.  (Id. ¶¶16-17.)

Hagan further contends that he personally met with Secretary Wetzel on multiple occasions to complain about his lack of treatment, the fact that he was removed from the mental health roster, and had his medications altered; and Hagan alleges that Wetzel acknowledged Hagan's mental health needs but was still placing Hagan in "an environment that does not assess or evaluated [sic] inmates." (Id. ¶¶23-28.)  Hagan claims that in August, 2013, after he met with Secretary Wetzel, Hagan cut himself but was not treated by staff.  (Id. ¶ 32.)  Hagan alleges that other staff, including defendant Marsh, were made aware of his mental health needs but took no action or actively impeded treatment or evaluation in retaliation for Hagan filing grievances.  (Id. ¶¶ 33-38.)   Hagan claims that an unidentified staff member encouraged him to commit suicide, and that Hagan attempted to do so on October 1, 2013.  (Id. ¶ 38.)

Upon consideration, while we agree with the defendants' assertion that Hagan

has not yet "established" or otherwise proved these serious allegations, we do not find

that the second amended complaint fails to set forth sufficient factual allegations to

support a claim against the defendants for deliberate indifference based upon their

alleged manipulation of Hagan's mental health diagnosis and treatment regimen, and

their alleged refusal to provide Hagan with mental health treatment for several

months during 2013.[2]  Whether Hagan can prove what he alleges must await another

day and a different form of motion, a motion for summary judgment.

## C.    First Amendment Retaliation

Closely related to Hagan's claims that the defendants were deliberately

indifferent to his mental health needs is his claim that the defendants denied Hagan

---

[2] Defendants Marsh and Wetzel also argue, in part, that Hagan's claims for
deliberate indifference should be dismissed as to them because there are
insufficient facts plead to show personal involvement on their part.  We disagree.
The second amended complaint includes multiple allegations that appear intended
to show personal involvement by both of these defendants in the alleged
unconstitutional conduct, and that they were aware of and permitted the
unconstitutional conduct of others.  (Doc. 28, ¶¶ 19-29 and 34-37.)  Although we
recognize that Hagan must establish personal involvement by all defendants in
order to sustain his claims, and that liability cannot be predicated solely on
*respondeat superior* alone, see Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d
Cir. 1988), in this case Hagan has made sufficient allegations of personal
involvement by all remaining defendants to survive the pending motions to
dismiss.

mental health treatment, medication, and other therapies in a concerted effort to retaliate against Hagan for his persistence in filing grievances and engaging in other activities protected by the First Amendment.

"Retaliation for the exercise of a constitutional right is itself a violation of rights secured by the Constitution actionable under section 1983." White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990). In Allah v. Seiverling, the Third Circuit Court of Appeals held that, "government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for the exercise of a constitutional right." 229 F.3d at 224-25 (quoting Thaddeus-X v. Blatter, 175 F.3d 378, 386 (6th Cir. 1999) (en banc)). Accordingly, the law of this Circuit is clear that a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges that he was denied. Id. at 225.

A prisoner claiming that prison officials have retaliated against him for exercising his rights under the First Amendment must prove that: (1) the conduct in which he engaged was constitutionally protected; (2) he suffered adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct." Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 200)). An adverse action is one sufficient to deter a person of

ordinary firmness from exercising his rights.  Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000); see also Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003); Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001)).  The crucial third element, causation, requires a plaintiff to prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.  See Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007); Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997)).

Once a plaintiff has made a *prima facie* case, the burden shifts to the defendants to prove by a preponderance of the evidence that they "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest."  Carter, 292 F.3d at 158.  When analyzing a retaliation claim, courts are to bear in mind that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly where prison security is concerned.  Rauser, 241 F.3d at 334.

Applying the foregoing legal guidelines together with the prevailing pleading standards applicable in federal court, we conclude that Hagan has adequately stated a claim for First Amendment retaliation against each of the named defendants.  Any fair reading of the second amended complaint reveals that Hagan has made a number

of specific allegations against each named defendant with respect to their various alleged decisions to deprive him of medical care and treatment, and that such actions were allegedly undertaken specifically to retaliate against him for filing grievances and other litigation against prison staff.  Contrary to the defendants' suggestions otherwise, Hagan does not appear to be relying solely on temporal proximity to prove causation in this case; he has alleged that on numerous instances the defendants specifically told him that he was being denied medical care, related evaluations, and necessary medication specifically because he persisted in filing grievances against prison staff and officials.  Hagan is thus alleging specific instances of retaliatory conduct, and alleging that the defendants informed him of the very retaliatory basis for their actions.  Accordingly, to the extent the defendants are contending that the second amended complaint is deficient because it somehow fails to allege temporal proximity to prove causation, we do not find that this is a basis to dismiss in this case on the pleadings alone.  Rather, liberally construed, we find that Hagan's claims for First Amendment retaliation are sufficiently pleaded and will not be dismissed at this stage of the litigation.

### D.     Hagan Has Adequately Pleaded a Conspiracy

Finally, the defendants argue that Hagan has failed to allege sufficient facts to support his claim that the defendants conspired with one another to violate his rights.

18

Although the second amended complaint is not replete with specific allegations of conspiratorial conduct, we find that Hagan has adequately state a claim that the defendants conspired to violate his rights.

In order to plead a civil rights action based upon a claim of conspiracy, a plaintiff must plead allegations that are

> supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each defendant allegedly played in carrying out those objectives. Bare conclusory allegations of "conspiracy" or "concerted action" will not suffice to allege a conspiracy. The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred.

Flanagan v. Shively, 783 F. Supp. 922, 928 (M.D. Pa. 1992). Furthermore, when pleading a conspiracy claim, a plaintiff cannot rely upon subjective suspicion and speculation. Young v. Kann, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991). We are mindful of these pleading requirements, which are considered together with the standards of pleading applicable to all civil actions in federal court as defined in Twombly and Iqbal, supra.

The defendants insist that the second amended complaint is entirely bereft of any facts "that could even reasonably suggest the presence of an agreement or concerted activity between the defendants." (Doc. 45, at 5.) To the contrary, the

19

second amended complaint does contain a number of allegations that purport to recount specific instances of concerted conduct by the defendants.  Thus, Hagan alleges that defendants Dolphin, Swisher and Harrington expressly "agreed" that Hagan would be taken off of his medication in retaliation for continuing to file grievances and related paperwork.  (Doc. 28 ¶ 5-6.)  Although the second amended complaint is relatively short on specific facts to show an agreement among defendants Marsh and Wetzel and the remaining three defendants, there are sufficient facts pled to at least suggest the inference of an agreement, and we do not find that it would be appropriate to dismiss this claim at the outset of the litigation without giving the parties an opportunity to address it later on summary judgment when we may consider matters developed in discovery beyond the pleadings.  Thus, Hagan alleges that when he approached defendant Marsh in August, 2013, about the problems he was having, and specifically about Dolphin having deprived Hagan of his needed medication, Marsh is alleged to have responded that "We have something planned for you.  I think you'll like what we have planned and we don't want anyone interfering with our plans including S.A.U. staff or the D.O.J." (Id. ¶ 35.)  In another paragraph, Hagan suggests that Wetzel was informed of the problems alleged with respect to Dolphin and Swisher, and that he responded that Hagan should follow the treatment plan that Dolphin had prescribed and stop filing grievances.  (Id. ¶ 39.)   Although these

20

averments are far from overwhelming, and remain to be proved, and may fail at a later sage of these proceedings, they are sufficient at this point to permit Hagan's conspiracy claims to proceed.

## III.   <u>CONCLUSION</u>

Accordingly, for the foregoing reasons, the defendants' pending motions to dismiss the second amended complaint will be denied.  An appropriate order shall issue separately.

<u>*/S/ MARTIN C. CARLSON*</u>
Martin C. Carlson
United States Magistrate Judge

Dated: October 15, 2014