## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAMONT HAGAN,** | : | Civil No. 1:13-CV-2731 |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | **(Magistrate Judge Carlson)** |
| | : | |
| **QUENTIN DOLPHIN, et al.,** | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM OPINION AND ORDER

### I.     Statement of Facts and of the Case

The plaintiff in this action, Damont Hagan, is an inmate in the custody of the Pennsylvania Department of Corrections, (DOC) currently housed at the State Correctional Institution at Huntingdon. He is also a frequent litigant in federal court. In this case, Hagan has sued five individuals, all of whom are contracted with or employed by the DOC, alleging that the defendants engaged in a conspiracy to modify his health diagnosis and discontinue his prescription medications in order to keep him hidden from certain Department of Justice officials who were intending to tour the facility and interview inmates as part of an investigation. Hagan also alleges that the defendants took these actions to retaliate against him for filing grievances and other litigation against prison staff. Additionally, Hagan alleges that the defendants

prolonged his detention in segregated housing, and exhibited deliberate indifference to his serious medical needs, in violation of the Eighth Amendment.

This case now comes before the court for resolution of a discovery dispute. Specifically, Hagan has filed a motion to compel which seeks access to what he describes as documents contained among his medical records which allegedly identify Hagan as a security risk due to his focus on litigation. (Doc. 66.) The defendants have responded by arguing that the disclosure of these documents would entail release of information pertaining to sensitive security matters, and that Hagan has not shown that the documents sought are relevant. (Doc. 71.) This motion is now fully briefed by the parties. (Docs. 67, 71, and 78.) Upon consideration of the motion to compel, the motion will be denied, in part, and granted, in part, as follows: The defendant will be directed to produce for *in camera* inspection any previously non-disclosed medical and related reports described by Hagan, so the court may assess their relevance and any claims of privilege relating to these documents.

**II.    Discussion**

Several basic guiding principles inform our resolution of the instant discovery dispute. At the outset, Rule 37 of the Federal Rules of Civil Procedure governs motions to compel discovery, and provides that:

(a) Motion for an Order Compelling Disclosure or Discovery

> (1) In General. On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. . . .

Fed. R. Civ. P. 37(a).

The scope of what type of discovery may be compelled under Rule 37 is defined, in turn, by Rule 26 of the Federal Rules of Civil Procedure, which now provides that:

> (1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense-- including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence

Fed. R. Civ. P., Rule 26(b)(1).

Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the court's discretion and judgment. Thus, it has long been held that decisions regarding Rule 37 motions are "committed to the sound discretion of the district court." DiGregorio v. First Rediscount Corp., 506 F.2d 781, 788 (3d Cir. 1974). Similarly, issues relating to the scope of discovery permitted under Rule 26 also rest in the sound discretion of the

Court. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). Thus, a court's decisions regarding the conduct of discovery, and whether to compel disclosure of certain information, will be disturbed only upon a showing of an abuse of discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J.1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D.Pa.2004) (citing Scott Paper Co. v. United States, 943 F.Supp. 501, 502 (E.D.Pa.1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J.1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y.1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y.2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

This discretion is guided, however, by certain basic principles. Thus, at the outset, it is clear that Rule 26's broad definition of that which can be obtained through

discovery reaches only "nonprivileged matter that is relevant to any party's claim or defense." Therefore, valid claims of relevance and privilege still cabin and restrict the court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all "relevant information" a concept which is defined in the following terms: "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

A party moving to compel discovery bears the initial burden of proving the relevance of the requested information. Morrison v. Philadelphia Housing Auth., 203 F.R.D. 195, 196 (E.D.Pa. 2001). Once that initial burden is met, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed.R.Civ.P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." In re Urethane Antitrust Litigation, 261 F.R.D. 570, 573 (D.Kan. 2009).

Furthermore, in a prison setting, inmate requests for information relating to security procedures can raise security concerns, and implicate a legitimate governmental privilege, a governmental privilege which acknowledges a

governmental needs to confidentiality of certain data but recognizes that courts must balance the confidentiality of governmental files against the rights of a civil rights litigant by considering:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intra-departmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiffs case.

Frankenhauser v. Rizzo, 59 F.R.D. 339, 344 (E.D. Pa. 1973).

With these legal guideposts in mind, we turn to consideration of Hagan's discovery requests.

In this case, it appears that the contested records relate to assessments of the security risks presented by Hagan as a result of his focus on litigation activities. Without knowing the content of these documents it is difficult to assess their relevance to the claims in this lawsuit. We note, however, that similar claims for an inmate's psychological records have been made, and accommodated, by the courts

and correctional officials in the past.  For example, in <u>Mincy v. Chmielewski</u>, No. 05-292, 2006 WL 3042968 (M.D.Pa. Oct. 25, 2006), this court faced a similar request, which the court resolved in terms that are equally applicable here. As the court observed in that case:

> Plaintiff also seeks the release of psychological records.  Defendants oppose general disclosure of these documents for a number of reasons . . .point[ing] out that the value of mental health records lies in the candid nature of the information..  Disclosure compromises honest opinions and frank evaluations and could potentially subject staff and treating professionals to retribution, thereby inhibiting candid observations from these individuals.  Also of concern is that disclosure could reveal the "methods and manner used to monitor inmate behavior" which may lead to inaccurate assessments, improper institutional placement, and premature release.
>
> Despite these valid objections, defendants have agreed to release certain medical and mental health information pertinent to plaintiff's admission to the psychiatric observation cell during his hunger strike in late November and early December 2004, provided plaintiff agrees to execute a confidentiality agreement. (Doc. 93, p. 9).  Given that this is the only time period relevant to the complaint, the court finds that defendants' proposal is reasonable.  Defendants will be required to release the pertinent mental health records, provided the precondition of execution of a confidentiality agreement is met.

<u>Mincy</u> 2006 WL 3042968, 2 (M.D.Pa. Oct. 25, 2006)(internal citations omitted). Thus, the release of a prisoner's psychological records to that inmate, subject to temporal limits and the execution of appropriate releases and confidentiality agreements, has been a practice that has been endorsed by the courts in the past.

The defendants raise some more heightened security concerns, however, alleging that this information may be sensitive from an institutional security perspective. These concerns may not be addressed in an informed fashion in the abstract. Therefore, we will decline to authorize wholesale disclosure of these documents on the grounds that such disclosure may gravely impair institutional security, see e.g., Banks v. Beard, 3:CV-10-1480, 2013 WL 3773837 (M.D. Pa. July 17, 2013); Mearin v. Folino, CIV.A. 11-571, 2012 WL 4378184 (W.D. Pa. Sept. 24, 2012), but, consistent with prior case law and acting out of an abundance of caution, we will direct a narrowly tailored *in camera* review of these records. See, Victor v. Lawler, 3:08-CV-1374, 2011 WL 1884616 (M.D. Pa. May 18, 2011) reconsideration denied, 3:08-CV-1374, 2011 WL 3664741 (M.D. Pa. Aug. 19, 2011) and on reconsideration, 3:08-CV-1374, 2011 WL 4753527 (M.D. Pa. Oct. 7, 2011). Specifically, the defendants shall provide to the court, for its *in camera* inspection, the investigative documents in their possession regarding this incident that have not been released to the plaintiff so the court may determine whether these records, on their face, contain evidence relevant to Hagan's claims in this litigation.

AND NOW, this 1st day of April, 2015, the plaintiff's motion to compel (Doc. 66.), is DENIED, in part, and GRANTED, in part, as follows:

On or before **April 17, 2015**, we direct the defendants to provide to the court for its *in camera* inspection all disputed documents, including records contained among Hagan's medical records which allegedly describes Hagan as a security risk due to his focus on litigation. Armed with this information the court can determine: (1) whether this information is relevant to the issues raised in this case; (2) whether it is subject to any valid claim of privilege recognized by the Federal Rules; and (3) to what extent, in what format, and under what conditions it may be released to the plaintiff.

          *S/Martin C. Carlson*
          Martin C. Carlson
          United States Magistrate Judge