**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAMONT HAGAN,** | : | **Civil No. 1:13-CV-2731** |
| | : | |
| **Plaintiff** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **QUENTIN DOLPHIN, et al.,** | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM OPINION**

## I.   INTRODUCTION

The plaintiff in this action, Damont Hagan, is an inmate in the custody of the

Pennsylvania Department of Corrections (DOC), currently housed at the State

Correctional Institution at Huntingdon.  He is also a frequent litigant in federal court.

In this case, Hagan has sued five individuals, all of whom are contracted with or

employed by the DOC, alleging that the defendants engaged in a conspiracy to modify

his health diagnosis and discontinue his prescription medications in order to keep him

hidden from certain Department of Justice officials who were intending to tour the

facility and interview inmates as part of an investigation.[1]  Hagan also alleges that the

defendants took these actions to retaliate against him for filing grievances and other

---

[1] The remaining defendants in this action include Quentin Dolphin, David
Swisher, James Harrington, Robert Marsh, and John Wetzel, the Secretary of the
Pennsylvania Department of Corrections.

litigation against prison staff.   Additionally, Hagan alleges that the defendants prolonged his detention in segregated housing, and exhibited deliberate indifference to his serious medical needs, in violation of the Eighth Amendment.

The case now comes before the court, once again, for resolution of a discovery dispute.  Specifically, Hagan has filed a new motion to compel the defendants to produce documents in response to his fourth, sixth and seventh request for the production of documents, and to provide more fulsome answers to a second set of interrogatories that Hagan propounded upon Secretary Wetzel.[2]

The document requests include those directed to Secretary Wetzel seeking information related to an investigation allegedly conducted by the United States Department of Justice (DOJ) into the mental health challenges faced by inmates in solitary confinement within Pennsylvania prisons; grievance documents and requests Hagan made to staff; and information from Hagan's medical file, including what he describes as information relating to a decision to alter or remove a particular mental health diagnosis that he had previously been assigned.  With respect to the second set of interrogatories directed to Secretary Wetzel, Hagan seeks records and information relating to the establishment of the DOC's Behavioral Management Unit and the

---

[2] Hagan previously filed a motion to compel in this case (Doc. 66), which the Court granted in part and denied in part.  (Doc. 82.)  He has another motion to compel pending (Doc. 74), which will be addressed in a separate order.

development of policies relating to that unit.  (Doc. 95, Exhibits.)

The defendants have responded to the motion, arguing that it should be denied because the responses they have furnished Hagan comply fully with the Federal Rules of Civil Procedure; because the information that Hagan seeks should be, in some instances, already in his possession; because Hagan's medical file has been made available to him, and he has been informed that he is permitted to make copies of documents contained within it provided that he pays for them; because some of the information sought either does not exist and, if it did, it would be subject to privilege; and because the information Hagan seeks is not relevant.  The motion is fully briefed and, for the reasons that briefly follow, will be granted in part and denied in part.

## II.   **DISCUSSION**

Several basic guiding principles inform our resolution of the instant discovery dispute.   At the outset, Rule 37 of the Federal Rules of Civil Procedure governs motions to compel discovery, and provides that:

**(a) Motion for an Order Compelling Disclosure or Discovery.**

**(1) *In General.*** On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

3

Fed. R. Civ. P. 37(a)(1).

The scope of what type of discovery may be compelled under Rule 37 is defined, in turn by Rule 26 of the Federal Rules of Civil Procedure, which now provides that:

> **(1) *Scope in General.*** Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Fed. R. Civ. P. 26(b)(1).

Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the court's discretion and judgment. Thus, it has long been held that decisions regarding Rule 37 motions are "committed to the sound discretion of the district." DiGregorio v. First Rediscount Corp., 506 F2d 781, 788 (3d Cir. 1974). Similarly, issues relating to the scope of discovery permitted under Rule 26 also rest in the sound discretion of the Court. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). Thus, a court's

decisions regarding the conduct of discovery, and whether to compel disclosure of

certain information, will be disturbed only upon a showing of an abuse of discretion.

Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983).  This far-reaching

discretion extends to rulings by United States Magistrate Judges on discovery matters.

In this regard:

> District courts provide magistrate judges with particularly
> broad discretion in resolving discovery disputes.  See
> Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group
> Sec., Inc., 174 F.R.D. 572, 585 (D.N.J. 1997).  When a
> magistrate judge's decision involves discretionary
> [discovery] matter . . . , "courts in this district have
> determined that the clearly erroneous standard implicitly
> becomes an abuse of discretion standard."  Saldi v. Paul
> Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D. Pa. 2004)
> (citing Scott Paper Co. v. United States, 943 F. Supp. 501,
> 502 (E.D. Pa. 1996)).  Under that standard, a magistrate
> judge's discovery ruling "is entitled to great deference and
> is reversible only for abuse of discretion."  Kresefky v.
> Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64
> (D.N.J. 1996); see also Hasbrouck v. BankAmerica Hous.
> Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y. 1999) (holding that
> discovery rulings are reviewed under abuse of discretion
> standard rather than de novo standard); EEOC v. Mr. Gold,
> Inc., 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a
> magistrate's resolution of discovery disputes deserves
> substantial deference and should be reversed only if there
> is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

This discretion is guided, however, by certain basic principles.  Thus, at the

outset, it is clear that Rule 26's broad definition of that which can be obtained through

discovery reaches only "nonprivileged matter that is relevant to any party's claim or defense."  Therefore, valid claims of relevance still cabin and restrict the court's discretion in ruling on discovery issues.  Furthermore, the scope of discovery permitted by Rule 26 embraces all "relevant information," a concept which is defined in the following terms: "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

A party moving to compel discovery bears the initial burden of providing the relevance of the requested information.  Morrison v. Philadelphia Housing Auth., 203 F.R.D. 195, 196 (E.D. Pa. 2001).  Once that initial burden is met, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure."  In re Urethane Antitrust Litig., 261 F.R.D. 570, 573 (D. Kan. 2009).

Furthermore, in the prison setting, inmate requests for information that may touch upon security procedures can raise security concerns, and implicate a legitimate governmental privilege, a governmental privilege which acknowledges a

governmental need to maintain confidentiality of certain data, but recognizes that

courts must balance the confidentiality of governmental files against the rights of a

civil rights litigant by considering:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.

Frankenhauser v. Rizzo, 59 F.R.D. 339, 344 (E.D. Pa. 1973).

With these legal considerations in mind, we turn to consideration of Hagan's

discovery requests.


### 1.      Plaintiff's Sixth Request for Production of Documents.

In Hagan's sixth document request, which he directed to Secretary Wetzel, he

sought to be provide with documentation regarding the "specific diagnosis the

Department of Justice was interested in regarding their expanded investigation into serious mentally ill inmates in solitary confinement." (Doc. 95, Ex. Z-2.)  Wetzel objected to this request, noting that the information was more properly sought from the Department of Justice.  Furthermore, Wetzel objected to producing any documents because all correspondence between the DOJ and the DOC would have taken place through counsel, and therefore Wetzel argued that all of the information sought would be cloaked in attorney-client privilege.

We have some difficulty accepting a blanket assertion that correspondence between counsel of the DOJ and DOC would be subject to a legitimate assertion of the attorney-client privilege for the simple reason that the defendants have represented that any communication was not, in fact, between an attorney and a client, but rather between counsel for two government agencies.  But it is unimportant to examine this issue, because we find that Secretary Wetzel has articulated a reasonable and compelling reason for declining to produce the information sought: due to its sensitive nature, the DOC does not disclose to inmates detailed information regarding investigations that may be conducted into its prisons' conditions, including information relevant to security and housing of inmates.

Hagan does not appear to appreciate the DOC's plainly relevant security concerns about sharing sensitive information such as state and federal investigative

information with inmates, but even more than that he has not persuaded the Court that the sensitive information he seeks is particularly relevant or especially important to his case, considerations that <u>Frankenhauser</u> teaches should be taken into consideration. Furthermore, we believe that the third and fourth factors identified in Frankenhauser – the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure, and whether the information sought is factual data or evaluative summary – militate against compelling wholesale disclosure of this information.

### 2.    Plaintiff's Fourth Request for Production of Documents.

In a document request directed to Defendant Swisher, Hagan seeks grievance documents, requests to staff members, progress notes from his medical files, treatment plans from his medical files, "recommendations or miscellaneous documents" from his medical files, and other documentation within his medical record.  (Doc. 95, Ex. Z-7.)

The defendants have objected to producing any of the grievances or request forms on the grounds that Hagan should have copies of them, since the forms are in carbon-copy, with one copy to be kept by the inmate.  Defendants argue that it would be a "waste of resources" to compel them to produce documents that Hagan could have maintained, but apparently did not.  (Doc. 97, at 4.)  While we appreciate that

Hagan has doubtless been provided copies of these records previously, we do not agree that this is a sufficient basis to withhold responsive documents, and find that any incidental burden to the defendants is sufficiently minimal to justify requiring the defendants to provide Hagan with copies of grievances and other requests that may be within their possession that are responsive to his requests. This aspect of Hagan's motion will be granted, and the defendants will be required to provide Hagan with a further response along with any responsive grievances or staff requests that are in their possession.

With respect to the plaintiff's request for medical documentation, the defendants have represented that they have consistently told Hagan that he is able to view his medical and mental health records at a time convenient to the records department at SCI-Huntingdon, and at that time to make any copies of documents maintained in those files at his own expense consistent with DOC policy. The plaintiff has responded by arguing that documents have been removed from his files, or by suggesting that his medical files are somehow incomplete. The plaintiff's argument in this regard is not an adequate response to what the defendants have offered. To the extent the plaintiff has evidence to show that the defendants improperly disposed of his personal medical information, or that they have withheld evidence, he may file a motion seeking appropriate relief. However, at this time we

find no basis to compel the defendants to do anything other than what they have offered to do, namely, make the plaintiff's medical files available to him for inspection and copying, if he desires. This aspect of the motion will therefore be denied.

### 3. Plaintiff's Seventh Request for Production of Documents.

The plaintiff's seventh request for production of documents was directed to Defendants Swisher and Marsh, and sought progress notes between these defendants regarding the decision to remove a medical diagnosis that had previously been assigned to Hagan. (Doc. 95, Ex. Z-5.)

The defendants have objected to this request on the grounds that the plaintiff has not provided insufficient detail to identify this particular document being sought, despite the fact that the plaintiff has provided a month and year during which he believes the document was created and filed. More fundamentally, the defendants have again represented that the plaintiff may inspect his medical records and make copies of any documents that he deems necessary for this litigation. The defendants also suggest that the plaintiff simply misapprehends the way in which inmates are diagnosed, which the defendants represent is a matter committed exclusively to a psychiatrist.

To the extent that defendants have within their possession one or more

documents that are responsive to the plaintiff's request, and to the extent there is no legitimate basis for withholding this information, the defendants should produce the documents, and the Court expects that the defendants will do so.   Moreover, the plaintiff has been provided the opportunity to examine his medical records, and he should feel free to take advantage of that opportunity and to make copies of documents he believes may be relevant to this litigation. However, we understand the defendants to be representing to Hagan and to the Court that they ***do not*** have the documents that Hagan claims exist; if this is the case, we have no basis or ability to compel a further response since one other immutable rule defines the court's discretion when ruling on motions to compel discovery. It is clear that the court cannot compel the production of things that do not exist. Nor can the court compel the creation of evidence by parties who attest that they do not possess the materials sought by an adversary in litigation. See, e.g., AFSCME District Council 47 Health and Welfare Fund v. Ortho-McNeil-Janssen Pharmaceuticals, Inc., No. 08-5904, 2010 WL 5186088 (E.D.Pa. Dec. 21, 2010); Knauss v. Shannon, No. 08-1698, 2009 WL 975251 (M.D.Pa. April 9, 2009).

### 4.    Plaintiff's Second Set of Interrogatories.

The plaintiff directed his second set of interrogatories to Secretary Wetzel, and in the pending motion seeks to compel further response to the questions posed, which

seem to concern the DOC's development of a Behavioral Management Unit or "BMU". (Doc. 95, Ex. Z-2.) Hagan seemed to be inquiring into his own eligibility for placement into the BMU, the reasons for any potential placement there, and information regarding the BMU program itself. (Id.)

Upon review of the interrogatories, the Court is unable to discern how the questions Hagan asks of Wetzel are relevant to the claims in this case, which concerned Hagan's housing elsewhere within the DOC, and not within the BMU. Thus, we do not find any basis to compel further answers to interrogatories about a housing unit that is simply not relevant to Hagan's claims in this lawsuit.

In reviewing the defendants' objections to the interrogatories, we are also constrained to find that the objections are well-placed. As the defendants rightly observe, Hagan refers Wetzel to correspondence he allegedly sent, but Hagan does not attach copies of that correspondence for Wetzel's (or the Court's) review, making Hagan's requests seem presumptuous and inadequately supported. In other areas, Hagan presumes that Wetzel had conversations with others, and then asks about these conversations, but there is no evidence that such conversations actually occurred. Furthermore, the defendants once again noted that the plaintiff has access to his medical and mental health records, which does appear to be an appropriate locus of inquiry for the plaintiff's questions regarding his mental health. Finally, to the extent

the plaintiff is seeking additional answers to questions posed about a housing unit that

is not relevant to the claims in this case, we find no basis for such discovery and the

motion will be denied.

## III.   <u>ORDER</u>

Accordingly, for the reasons discussed above, upon consideration of the

plaintiff's motion to compel (Doc. 94), IT IS HEREBY ORDERED THAT the motion

is granted in part and denied in part as follows:

1.   If the defendants have copies of the grievances and staff requests that the plaintiff is seeking in the plaintiff's fourth request for the production of documents (Doc. 95, Ex. Z-7), they shall provide copies to the plaintiff within 14 days from the date of this Order.

2.   If the defendants are in possession of progress notes or documents shared between Defendants Swisher and Marsh  regarding the alleged decision to remove a medical diagnosis that had previously been assigned to Hagan  (Doc. 95, Ex. Z-5), they shall provide copies to the plaintiff within 14 days from the date of this Order.

3.   To the extent Hagan seeks to review his medical file, the defendants have represented that they make it available to him, and that Hagan will be able to make copies of documents in that file at his own expense.  To the extent Hagan wishes to conduct such a review, he shall notify defendants' counsel who shall work with officials at SCI-Huntingdon to facilitate this review.

In all other respects, the motion to compel is DENIED.

So ordered this 18th day of May, 2015.

_/S/ Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge